Good morning, Your Honors. May it please the Court, my name is Cynthia Putter. I represent the appellant, All-Tex, Inc. Your Honors, this first appeal involves the distribution of proceeds out of a bankruptcy estate. The next appeal that you're going to be hearing regards whether or not the liens that were asserted in that lawsuit should have in fact been avoided. This appeal, while it comes first, in fact involves what happened after the court decided to avoid those liens. My client asserted liens on some sales proceeds in a piece of property relating to pre-bankruptcy conduct as of the petition date, which was the date that the bankruptcy was filed. The bankruptcy court then avoided those liens under Bankruptcy Code Section 544 and 545 and then held a separate briefing on what would be the result of the avoidance of those liens. In essence, in avoidance, what happens is the debtor who brings avoidance causes of action for the benefit of unsecured creditors then stands in the shoes of the position that All-Tex had. That's under 551 of the bankruptcy court. The court required separate briefing and she ruled that the debtor would stand in the shoes of All-Tex. There's a footnote on the second to last page of her findings that basically says that the debtor stands in the shoes of All-Tex. It does not allow other creditors who would have been in a different place in priority to basically move up and therefore have the benefit of the lien position that was avoided in any proceeds attributed thereto. We thought it was very clear that once the liens were avoided that that would be avoided for the benefit of the unsecured creditors. That of course still depends on those liens actually having a priority and in fact being liens. That's exactly right, Your Honor. I mean, I suppose in a way you're right, the cases are backward. This case depends somewhat on the other case that we'll hear in a minute. That's exactly right, Your Honor. Even, can't, let us assume for a minute that something was avoided and can't the trustee exercise judgment as to what to do with it? Absolutely, Your Honor, and the Bankruptcy Code provides a whole provision when there are these kinds of claims for the debtor to investigate them and if the debtor desires to abandon them to file a motion to abandon them. In the Central District, you can abandon assets on 15 days' notice. What happened here is the judge abandoned it. She said at the end of her 551 memorandum that it was up to the debtor to make a decision as to whether it did or did not want to pursue this, but that process never occurred. But was there really an asset here? Because based on my review, it appeared that there was a litigating position as opposed to anything that had been determined to be an asset. So there was a theory, because I guess the purchase and sale agreement, the original one between Altex and Sunquist I, occurred after the loan from the, I may be mispronouncing the name, Fornacieres? I believe it's the Fornacieres. Fornacieres. And then you had a theory that even though that loan, the Fornacieres loan was prior, that they had done something post your purchase and sale agreement that gave you a superior position. So there was a litigating position that perhaps could have won, perhaps not, but there wasn't really anything that had been identified, either recorded or determined by a state court. Isn't that right? Well, that's right, Your Honor, but this will come up in the next appeal. Our belief is that under California law, you don't have to have that determined. When, in fact, you sign a purchase agreement, you have certain rights that arise right then and there, and those rights are binding on people who had notice of them subsequently. So in the bankruptcy case, while it's true there was litigation, it's also true that if those other people had notice of the Altex contract, that their liens would in fact be junior to ours. Under California law, even though they weren't recorded I understand that's your litigating position, but given that it's a litigating position that no court had agreed with, why wasn't it reasonable for the trustee to say, you know, we're going to not pursue them? Well, it would have been, Your Honor, if they would have done the analysis and filed a motion to abandon it. But what were they abandoning? I mean, they were abandoning a litigating position. That's my concern here. Well, but I think that any time you have a contested lien, which happens all the time in a Chapter 11, if any position to which there is a contest, you can then just start distributing monies to junior secured creditors, the system would be unworkable. Now, does there have to be a contested lien? In other words, does there have to be a lien that's recorded in some way, or are there cases saying that even when there's nothing recorded, that the bankruptcy trustee has an obligation to go through this process? Well, Your Honor, I believe that's the whole probasco, that a lien arises it's a race notice state. It's not just what's recorded, it's also what people have notice of. And so you get into the whole inquiry notice. Okay. That's the other case. That's the other pill. But that was the argument that because they did have notice, that they, in fact, were junior. Now, the fornicary lien is a little bit different because the first part of their money was put on shortly before the contract was signed. The rest of it was put on after. All of the SURF money, which the fornicary subordinated to, was put on years after the contract was signed. So that was the argument, that because of the inquiry notice, my client stood in line. The judge said, maybe I'm not going to decide that. I'm going to let the debtor stand in line. And then the debtor, without going through the process, which was critical to my client, because without those liens, my client is by far and away the largest unsecured creditor. The debtor didn't stand in those liens and come and say, these are the pros, these are the cons, like you always do under a bankruptcy rule 9019 settlement of any litigation. You bring it before the court and the court says, okay, I find that the choices or that the likelihood of succeeding is not substantial enough. I'm going to allow you to abandon this. Once it's abandoned, then the other creditors can be paid in priority. Our concern was that it was all done at exactly the same time. So there never was that analysis by the trustee of what was the validity of those positions. And the judge, in fact, said she wasn't going to make any ruling on those. She was just going to give them to the debtor for the benefit of the estate. Now, does your argument depend on how good a litigating position your client had? In other words, is it your view that the trustee has an obligation, regardless of how weak or how auspicious a claim might be? It is my position that the trustee has a duty to analyze it, that once it's preserved for the benefit of the estate. Because, remember, the debtor brought this litigation to preserve it for the benefit of the estate. The debtor didn't file a lawsuit saying, you're right, you have a lien, but your damages are $12, or something more de minimis. The debtor brought this entire litigation for the benefit of the estate, theoretically. So, no, it's not my position they have to pursue litigation. It is my position that under the bankruptcy code they have to analyze it, and if they believe it's invalid or they believe it should be abandoned, to then file a motion with the bankruptcy court to abandon it. Creditors have a full opportunity to come and argue what it is or is not worth. That was particularly critical in this case, Your Honor, because these liens occurred years or these issues occurred years before the debtor's bankruptcy counsel, in fact, got involved. In addition, there were no people or very few people left around at this time that had any of the facts. So for the debtor to analyze the validity of these liens, the debtor would have had to have come to my client and said, what do you have here? What do you have that shows these people had noticed? None of that happened. The debtor just said the liens, the court said the liens have been avoided. The debtor says, I think, you know, these people were recorded. We're going to give the money to them. That was the essence of the complaint, Your Honor, not that they didn't bring the action. You didn't object to them giving the money to them, did you? I'm sorry? You didn't really object to the distribution? We absolutely did, Your Honor. It's in the record. And we objected at the hearing that it was being done without any sort of form of a reservation of rights, and that is in the record. But we absolutely objected, Your Honor. Do you want to save some time for rebuttal? I have a minute 18. Thank you, Your Honors. Good morning, Your Honor. Frank Pepler appearing on behalf of Burke Fornissery, Linda Fornissery, and the Fornissery Replicable Trust. My client made a purchase money loan in 1999 to allow Sunquest One to purchase the property that is the subject of many pieces of litigation brought by Altex. It recorded that deed of trust that secured a 60-day bridge loan and only received payment on that loan through the bankruptcy in 2008. Between those two times, the debtor had a series of financial reversals, which my client attempted to work with. And in the bankruptcy, my client asserted a lien based on its recorded due of trust, was sued by two sets of misfooters clients, plus two other ones. And ultimately, when the property that was the only asset of this bankruptcy case, the property that was primarily purchased with purchase money financing provided by my clients, when that property was sold, my clients made a motion to disperse. And Altex did, in fact, object to the disbursement. Now, the debtor in the case has never objected to the allowance and payment of my client's claim. But Judge Thompson took the motion to disperse under advisement, the debtor's motion, permitted these adversary proceedings to go forward, one of which is the subject of the next appeal. And in January of 2008, wrote 110 pages of written decisions resolving every objection to my client's claim, every claim of subordination, every claim of lien, every objection, and on my client's motion, dispersed 90% of its principal plus accrued interest nine years after the fact. Altex took an appeal from that order, as well as an appeal from the order granting summary judgment on a subordination claim against my client, as well as an appeal of the order in favor of the debtor in the next appeal. What Altex did not do, ever, was obtain a stay-pending appeal of the disbursement of the money permitted to be dispersed to my client. My client, at that point, held an allowed, secured, indeed over-secured claim on cash that was sitting in the debtor's estate. If Altex wished to preserve its litigation position in the status quo as it existed at that time, it should have obtained a stay. One of its, I think it says in its brief, well, that's true if it's an egg that can't be unscrambled. But this is just a distribution to a client that can pay it back if it's wrong. Well, and that is perhaps correct as to the debtor's rights, where Ms. Footer argues that there is some independent duty of the debtor to abandon a cause of action, which does not exist in the law. The debtor has no affirmative duty to abandon a cause of action. Right now, the debtor still has an objection to Altex's claim. Altex has no secured or allowed unsecured claim in the case. The debtor has reserved its objection and can assert in that objection the claims that have been reserved by virtue of the debtor or the judge's, Judge Thompson's, order granting the debtor summary judgment. Ms. Footer's client is continuing to pursue litigation against my client in other fora. It is true that they can recover an independent money judgment if they can ever prove up these claims. They have not done that to date. So if there is a claim by the debtor, the debtor can sue for money damages. If Altex has an independent claim that does not reside in the bankruptcy estate, it can recover money damages. But even if the appeal is not moved, was that a question? Counsel, I've got a question as Judge Gould. Putting aside whether any of Altex's lien theories are valid, but just taking the fact that in the other case, the bankruptcy judge ruled that claims could be avoided. So as I understand in theory, the Altex claims passed to the bankruptcy estate. Is there law that says the bankruptcy estate then could just do what it wanted on the payment? Or did it have to have a formal hearing to abandon these claims that it had disputed, I guess? They weren't established claims. They were, as Judge Ikuda said, kind of a litigation position. When they're avoided, does the debtor have to have a formal process to say, okay, we've succeeded to those claims, we're not going to assert them? Your Honor, I know of no – Altex has presented no authority for the proposition other than local rules regarding abandonment that abandonment must be held. It is true that the debtor has now – that this debtor, Brandford Partners, has a fiduciary duty to examine and prosecute those claims if, in fact, it's in the best interest of the estate and the creditors to do so. This debtor, Ms. Footer, assumes that they have done nothing to evaluate the claims. I assume, and the record I think supports this, that they are withholding prosecution because the estate is administratively insolvent. They have no affirmative duty, Your Honor, to abandon the claims unless, in fact, they wish to abandon them to whom they belonged prior to the bankruptcy case. There is no formal requirement that they evaluate them and then give them away if they have no merit. Instead, they can evaluate them and preserve them to the extent that they have any value at all or negotiation with my clients or Ms. Footer's clients or any other creditor in the case and exercise their best business judgment and their fiduciary duty to realize whatever small value this litigation position may have. But the duty and the notice and abandonment obligation of the debtor in possession only exists if the debtor has evaluated the claims, found they have no merit, and wishes to abandon them to the party outside the bankruptcy state to whom they would otherwise belong, which is either SunQuest I or SunQuest II. So for a variety of reasons, the debtor may have chosen not to do that. But in answer to Your Honor's question, I do not believe that all text has asserted any authority for the proposition that the debtor must evaluate and then abandon these claims. The debtor is free and has substantial discretion to administer the bankruptcy assets in whatever manner it seems suitable. And if it's holding back on these claims to try to negotiate settlements with my clients or others, it has the right to do so. I guess the position of your opponent is that the debtor not having abandoned it must pursue it. I know you've pointed out why you disagree with that. Clearly, all text believes in this strongly. It's asserted it in several different lawsuits, none of which have gotten traction before any court. However, the debtor does not have to follow the lead and expend scarce estate resources to pursue a creative litigation theory or some sort of vendetta that is asserted by one of its creditors. It has no duty to do that. It has the right as a debtor in possession to exercise its fiduciary duty to creditors, which include not only Ms. Flitter's client, which does not hold an allowed claim at this point, but my client's claims are the creditors holding liens in the order of their priority and then to unsecured creditors. There's no affirmative duty to blindly pursue one creditor's claims. Imagine what that would happen if, in a case like General Motors, General Motors had a fiduciary duty to assert a dealer claim or, you know, a parts supplier's claim. Bankruptcy cases, in terms of due process, require significant notice to a great number of parties, all of whom have a beef. Sometimes the bankruptcy court provides Section 544, 547, 548 and 549 as methods for debtors to avoid liens. If debtors had to then pursue avoided liens, notwithstanding the expense and consequences, bankruptcy process simply could not function and that duty does not exist. Counsel, is Judge Gould with another inquiry, if I may? Yes. I may take you a bit over your time, but I think, Judge, I could, I hope, will indulge this. So, technically speaking, as I'm seeing it, I'm not understanding how we have before us the question whether Altex might be able to assert a claim against the debtor for breach of its fiduciary duty. We just have the question whether the debtor could disperse to your secured client, right? Isn't there a distinction in those, in theory? Yes, Your Honor, I agree. The debtor, the bank, I think that the court, the bankruptcy court is really where this question originally resides. The bankruptcy court has the sound discretion to allow payment on secured claims. And in this case, the secured claim of my client was, in fact, oversecured. That is, there was more cash than there was debt. So, I made a motion to the bankruptcy court to permit the disbursement of money to my client because all objections to its claims had been adjudicated. The bankruptcy judge, Thompson, in her sound discretion and overall Texas objection, granted that motion. If Ms. Footer's client has a beef with that process, they could do one of several things. They could file an appeal, which they have done, which is or is not moot. They could move for the appointment of a trustee in the case to say that the debtor had not properly discharged its fiduciary duty. They didn't do that. So, it's really I made the motion to compel the debtor to pay an oversecured creditor and the bankruptcy judge in the exercise of its sound discretion granted that motion. And the debtor did not oppose the motion because I believe, and I think it expressed in the record, that it did not believe that the litigation position, which it just seceded to or succeeded to, by virtue of its avoidance action, gave it any leverage to deny distribution to my client. Well, the other reason is interest is running and your security would be good against the interest. That is correct. And the estate had already run up significant interest charges, both to the holder of the first deed of trust to whom my client contractually subordinated and my client. So, as time went on and the litigation continued, the scarce resources that might be available to pay unsecured creditors ultimately were being chewed up by attorney's fees and interest accruals on senior secured claims. Anything else? Nothing further. Thank you. Thank you. Thank you, Your Honor. Your Honors, if I may, with my minute 16. First of all, Mr. Pepler said a number of things that are just simply not true. For example, he said that the Court issued 110 pages of decision resolving objections to the fornicator's claim. I've never seen those. Perhaps they were in some bankruptcy case I wasn't involved in. But going to this question of abandonment, the whole theory, and Mr. Pepler's that, you know, you preserve these claims so you can use them to settle. You don't go after them because the estate is administratively insolvent. All of the reasons that a debtor in possession brings an avoidance action is for the purpose of preserving it for the estate. Had the debtor, in fact, looked at these claims, sat down with my client and looked at their validity, the fact might have been that they were senior to the fornicators. The fornicators are sitting here assuming their claims were valid, they were senior, they were oversecured. In fact, that's the very essence of the issue. The only way this estate would not have been administratively insolvent is if, in fact, some value could have been made out of the alt-exposition. I'm not suggesting that they have a duty to pursue everything, but Mr. Pepler is absolutely wrong on the duties of a trustee and the administration of a bankruptcy estate. If you look in the 3000 series, the trustee has a duty to evaluate assets and, if not pursue them, to abandon them. In this case, they weren't worthless. When he says that we haven't gotten any traction, that's just wrong. We're still standing here. Counsel, Judge Gould, with a question for you. Yes, sir. Could it have brought an adversary proceeding of some sort to say that the debtor was a breach of fiduciary duty in not evaluating the claims that were avoided? We could, Your Honor, and we still can. The problem is that when the court avoids the claims and then allows the distribution on the same day, then all we've got is a breach of fiduciary duty after the fact, which is why we've tried to preserve the right to these monies. But assuming for sake of argument that you had a valid claim of breach of fiduciary duty, then why would it give you a right to these monies that have gone to the other secured claimant? Why wouldn't it just give you a right of action against the debtor who breached a fiduciary duty? Your Honor, I believe it would give us both. The first breach of fiduciary duty for not evaluating it would be a question of what were our damages, which would then require an analysis of what the debtor did or did not do. That is separate and apart from whether or not, once it's preserved for the benefit of the estate, junior secured creditors should be paid instead. And I know that's the issue in the next appeal, but I believe we'd have both, Your Honor. They're not mutually exclusive. Thank you. Thank you. Okay. This case in Ray Branford, the all tax is submitted. This is dash 5-1.
judges: Canby, Gould, Ikuta